**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**FOURTH DIVISION**

In re:

Susan E. Wick,

Debtor.

John R. Stoebner, Trustee,

Plaintiff-Respondent,

vs.

Susan E. Wick; Teaching Temps, Inc.; and Nichols Kaster & Anderson,

Defendants-Appellants.

Case No. 00-1790 DDA

Bankruptcy No. 97-45270
Adversary No. 99-4284

**ORDER**

Nichols Kaster & Anderson, by DONALD H. NICHOLS and NICHOLAS G.B. MAY, for Defendants-Appellants.

Lapp, Laurie, Libra, Thomson & Stoebner, Chartered, by JOHN R. STOEBNER and DAVID A. HARBECK, for Plaintiff-Respondent.

This is a direct appeal from a final judgment in a bankruptcy adversary proceeding. The bankruptcy court ordered judgment in favor of the Trustee, and the Appellants elected to bring the appeal in district court pursuant to 28 U.S.C. § 158(c)(1). The case raises essentially two issues. First, if an asset the debtor claims as exempt increases in value after the filing of the bankruptcy petition, does an increase in the value of the asset above the amount the debtor claimed as exempt belong to the debtor or to the bankruptcy estate? Second, does the failure of a trustee to object to a debtor's claimed exemption within the time allowed by Fed.R.Bankr.P. 4003(b) preclude the trustee from later contesting the value of the asset the debtor claimed as exempt? The district court on appeal reviews the bankruptcy court's legal conclusions de novo. Taylor v. United States (In re Taylor), 212 F.3d 395, 396 (8th Cir. 2000). For the reasons stated in this opinion, the Court holds that post-petition appreciation of an asset claimed as entirely exempt belongs to the debtor and that, in any case, a trustee may not challenge the value of a

FILED JAN 0 2 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD JAN 0 2 2001
DEPUTY CLERK

debtor's exemption once the deadline for making an objection to the exemption has passed. The Court accordingly reverses the judgment of the bankruptcy court and orders entry of judgment in favor of the Appellants.

I.

Appellant Susan Wick in March 1997 entered into a contractual agreement with her then employer, Teaching Temps, Inc. ("TTI").[1] The agreement included a provision giving Wick a conditional right to receive stock in TTI. More particularly, TTI agreed to provide Wick with a contingent stock option that allowed Wick to receive shares of TTI's stock representing a certain percentage of ownership if Wick remained in TTI's employment for one year following the date of the agreement. Exactly four months later, in July 1997, Wick filed a voluntary Chapter 7 bankruptcy petition. Wick in the petition included her contingent stock option on the Schedule B list of personal property. Wick also included her contingent stock option on the Schedule C list of property claimed as exempt from the bankruptcy estate, citing 11 U.S.C. § 522(d)(5) as authority for the exemption. On both schedules Wick stated that the value of her contingent stock option was "unknown." The parties agree that Wick had no more than $3,925 of value remaining available under the cited exemption provision to apply to the contingent stock option. The trustee of Wick's bankruptcy estate, Respondent John Stoebner ("the Trustee"), had an opportunity at the creditors meeting to examine Wick about her claimed exemptions, and Wick at the Trustee's request provided the Trustee with a copy of her agreement with TTI. The Trustee did not object to any of Wick's exemptions, and Wick received her discharge from bankruptcy in November 1997.

Wick eventually completed the year of employment at TTI necessary to vest her rights under the employment agreement and in April 1998 began negotiations to exercise her stock option. Wick for various reasons did not receive her stock certificates until September 1998, and TTI terminated her employment shortly thereafter. Wick then commenced an action against TTI

---

[1] TTI was named as a defendant but was dismissed pursuant to a settlement agreement prior to trial and thus does not take part in this appeal.

in state court in which she requested, inter alia, a court-ordered buyout of her stock shares. That case proceeded to trial, and in March 1999 the state court granted a buyout and ordered TTI to pay Wick $97,200 for her stock. TTI filed an appeal but later settled with Wick for an amount that apparently included the full price for the stock as determined by the state court.

The Trustee after learning of the state court's order demanded that Wick turn over to the bankruptcy estate all cash she received for the stock in excess of $3,925. When Wick refused to do so, the Trustee obtained permission to reopen Wick's bankruptcy case, which had been closed some months earlier,[2] and commenced this adversary proceeding to recover some or all of the proceeds of the stock buyout for the bankruptcy estate. The bankruptcy court following another trial held that the estate received a one-third interest in Wick's contingent stock option when Wick filed her bankruptcy petition,[3] and the parties do not dispute that at the time of filing the estate's one-third interest was worth less than $3,925.[4] The bankruptcy court, however, also held

---

[2] The bankruptcy court found that Wick prior to the closing of the case had misled the Trustee concerning the exercise and value of her stock option. Based on that finding, the bankruptcy court held that reopening the case was appropriate and that the Trustee had not effectively abandoned the stock option when the case was closed. Wick on appeal does not argue that reopening the case was improper or that the Trustee abandoned the asset.

[3] The bankruptcy court relied on Allen v. Levy, 226 B.R. 857 (Bankr. N.D. Ill. 1998), in holding that the estate received a one-third interest in Wick's contingent stock option at the time of filing. Allen, like this case, involved stock options that were contingent upon the debtor's continued employment for a set period of time and that were not yet vested when the debtor filed his bankruptcy petition. Id. at 859-60. The court in Allen noted that the bankruptcy estate was not entitled to the value of the debtor's post-petition services and that the stock options could not vest without those post-petition services. Id. at 867. The Allen court therefore equitably divided the contingent stock options between the estate and the debtor, holding that the estate had an interest in subsequently vested stock options equal to the percentage of the total time of employment required to vest the options representing pre-petition services. Id. Following that reasoning, when Wick filed her petition the estate received an interest in one-third of Wick's contingent stock option since Wick at that time had completed one-third of the year of employment required to vest the option. Although Wick argues that she claimed the estate's interest as exempt in its entirety, neither party challenges the initial proportional allocation of the asset between Wick and the estate.

[4] The defendants at trial offered evidence that Wick's contingent stock option at the time of filing was worth $4,863 and that the estate's interest in the option was one-third of that amount, or $1,605. The bankruptcy court received this evidence over the Trustee's objection, and the Trustee has not maintained that objection on appeal. The bankruptcy court did not find those figures to be

that Wick did not exempt all of the estate's one-third interest in the contingent stock option and that the Trustee's failure to object did not preclude the Trustee from seeking to recover the estate's share of the proceeds of the buyout remaining after the exercise of Wick's exemption rights. The bankruptcy court accordingly entered judgment in favor of the trustee in the amount of $28,475, which represents one-third of the $97,200 total cash paid for Wick's stock less $3,925 for Wick's claimed exemption.

II.

Wick's primary argument is that her exemption as stated in the petition was sufficient to remove her contingent stock option, and by implication the resulting stock and the proceeds of the stock buyout, from the bankruptcy estate. Wick's position is predicated on the assumption that if a debtor claims the entire value of an asset as exempt that asset then "falls out" of the estate and title to the asset revests in the debtor. The validity of this assumption as a general matter was acknowledged in Abramowitz v. Palmer, 999 F.2d 1274, 1276 (8th Cir. 1993), but, as the bankruptcy court noted, Abramowitz is not the last word on the matter because Abramowitz did not involve an asset that increased in value during the administration of the bankruptcy estate.

The bankruptcy court held that if an asset claimed as exempt appreciates in value the estate has an interest in the asset to the extent that the asset's value and any post-petition appreciation exceed the value of the debtor's exemption. There is substantial authority for this position. It is well-settled that post-petition appreciation of a non-exempt asset belongs to the estate if such appreciation is not the result of the debtor's post-petition services. Potter v. Drewes (In re Potter), 228 B.R. 422, 424 (8th Cir. B.A.P. 1999). Although the Eighth Circuit has not addressed the issue, several courts in other jurisdictions have limited the debtor's exemption to the value the debtor claimed or was entitled to claim as exempt. See Hyman v. Plotkin (In re Hyman), 967 F.2d 1316, 1321 (9th Cir. 1992) (holding that the value of debtor's homestead

---

relevant for its analysis, but nothing in the record indicates that those figures are inaccurate or otherwise should not be considered here.

exemption was limited under California law and that the estate was entitled to all post-petition appreciation beyond value of exemption); In re Heflin, 215 B.R. 530, 534 (Bankr. W.D. Mich. 1997) (holding that the estate was entitled to post-petition appreciation in real property even though at time of filing the exemption and encumbrances on the property together exceeded the market value of the property); In re Sherbahn, 170 B.R. 137, 139 (Bankr. N.D. Ind. 1994) (rejecting argument that debtor was entitled to proportional share of post-petition appreciation of partially exempted asset). The Bankruptcy Code provides that the value of an asset generally is determined at the time the petition is filed, 11 U.S.C. § 522(a)(2), but courts disallowing the debtor any post-petition appreciation do not interpret this section as freezing the values of estate assets on the filing date. Hyman, 967 F.2d at 1320 n.9. The practical effect of this approach is to preclude the debtor from realizing any gain at the expense of the creditors from the exercise of exemptions.

Since the bankruptcy court issued its opinion, however, one of the cases it cited with respect to this issue, Polis v. Getaways, Inc., 242 B.R. 653 (N.D. Ill. 1998), was reversed on appeal. In re Polis, 217 F.3d 899 (7th Cir. 2000). The Seventh Circuit in Polis criticized the lower court's approach and held that the debtor's estate had no interest in an asset which at the time of filing had a value less than the value of the debtor's exemption even if that asset subsequently increased in value. Id. at 902. The appellate court in Polis held that § 522(a)(2) fixed the value of exempted property on the date of filing, 217 F.3d at 902, and reasoned that the benefit of establishing definitively the value of property, and thus the rights of persons with an interest in that property, on that date outweighed the risk that the debtor might receive a windfall if the property fluctuated in value. Id. at 903.

The concern that the parties have a set point in time at which their rights to property are established is reasonable, although a case conceivably could be made for setting that point at the close of the bankruptcy case rather than on the date of filing. As Polis indicates, however, the

Bankruptcy Code provides that asset values are determined on the date of filing.[5] There is no reason to suppose that this rule does not apply if it somehow works to the benefit of the debtor, especially since the debtor is not allowed to rewrite her exemptions if an exempted asset fluctuates downward in value rather than upward. Applying that rule to this case, the value of the estate's interest in the contingent stock option for purposes of Wick's exemption was $1,605 at the time of filing, which is less than the $3,925 of value remaining available to apply to that asset. Because Wick exempted all of the value of the contingent stock option, the contingent stock option was removed from the estate and revested in Wick. The estate for that reason had no interest in the stock Wick eventually received or in the proceeds of the stock buyout, and the Trustee's action to claim those proceeds for the estate should have been dismissed.

III.

Wick argues in the alternative that the result would be the same even if the contingent stock option was worth more than $3,925 at the time of filing because the trustee did not object to the exemption. This argument derives from Taylor v. Freeland & Kronz, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), in which the Supreme Court held on facts similar to those in this case that a trustee's failure timely to object to the debtor's exemption precluded the trustee later from claiming the exempted asset for the estate. Taylor has not met with an enthusiastic reception in the lower courts, and different strategies have developed for limiting Taylor to its facts. The bankruptcy court drew upon three such strategies in distinguishing Taylor and holding that Wick's exemption is limited to $3,925 of the proceeds of the stock sale even in the absence of an objection from the Trustee. None of these distinctions is valid, however, in the context of

---

[5] The Bankruptcy Code also provides that property that becomes property of the estate after the date of filing is valued as of the date it became estate property. 11 U.S.C. § 522(a)(2). The Trustee, following a suggestion in In re Wiczek-Spaulding, 223 B.R. 538, 541 (Bankr. D. Minn. 1998), maintains that the proceeds of the stock buyout did not "become property of the estate" until the state court's order in March 1999 and that the value of the asset for the estate is the amount the state court determined as of that date. This arguably would be true only if the estate retained an interest in the contingent stock option after the exercise of Wick's exemption right, which is not the case here. If the entire value of an asset is claimed as exempt, the asset belongs to the debtor and the estate retains no interest in it. The fruits of an exempted asset do not reenter the estate if those fruits have a greater value than the exempted asset.

this case.

An analysis of the bankruptcy court's holding requires a more detailed look at the facts of Taylor. The debtor in Taylor had an employment discrimination action pending in state court at the time she filed her bankruptcy petition. 503 U.S. at 640. The debtor included this lawsuit on her list of exempted assets and stated that the value of the lawsuit was "unknown." Id. The debtor had little value remaining under her available exemptions to apply to that asset. Id. at 642. The trustee nevertheless did not object to the exemption because he "doubted the lawsuit had any value." Id. at 641. The debtor later was the beneficiary of a favorable court ruling and settled her lawsuit for more than the amount necessary to pay her creditors in full. Id. The trustee sought to recover a portion of the settlement proceeds for the estate, and the debtor resisted on the ground that the proceeds were exempt. Id. The Supreme Court as an initial matter recognized that 11 U.S.C. § 522(l) read in conjunction with Fed.R.Bankr.P. 4003(b) allowed the trustee thirty days from the conclusion of the creditors meeting to object to the debtor's claimed exemptions;[6] since the trustee had not objected or obtained an extension of time to object within those thirty days, the property claimed as exempt in the bankruptcy petition was deemed exempt. 503 U.S. at 643. The Supreme Court also rejected the trustee's contention that this objection deadline does not apply "if the debtor did not have a good-faith or reasonably disputable basis for claiming" a particular exemption. Id. The Court held that once the thirty day deadline passed the trustee could not challenge the exemption regardless of whether the debtor had "a colorable statutory basis" for claiming it. Id. at 644.

Courts troubled by the possibility that debtors may receive the benefit of unwarranted exemptions have limited the application of Taylor through limiting the circumstances in which a trustee is expected to object. The most common method of doing this is what may be called the "red flag" interpretation of Taylor, which holds that a trustee need not object to an exemption

---

[6] 11 U.S.C. § 522(l) requires that a debtor file a list of property claimed as exempt and provides that unless "a party in interest objects, the property claimed as exempt on such list is exempt." Fed.R.Bankr.P. 4003(b) provides in pertinent part that the "trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors ... unless, within such period, further time is granted by the court."

unless the exemption includes some statement the trustee should recognize as inappropriate. See, e.g., In re Shoemaker, 155 B.R. 552, 555 (Bankr. N.D. Ala. 1992) (noting that in Taylor the debtor's use of "unknown" when stating the value of her lawsuit was "tantamount to waving a red flag in the trustee's face" concerning the debtor's intent to claim as exempt more value of the lawsuit than allowed under the applicable law). According to the weight of authority, the debtor raises such a "red flag" only if the debtor uses "unknown" or a similarly vague term to define the value of the exempted asset. Heflin, 215 B.R. at 533; In re Jackson, 194 B.R. 867, 875 (Bankr. D. Ariz. 1995); In re DeSoto, 181 B.R. 704, 708 (Bankr. D. Conn. 1995); In re Mercer, 158 B.R. 886, 888 n.1 (Bankr. D. R.I. 1994), aff'd sub nom. Mercer v. Monzack, 170 B.R. 759 (D. R.I. 1994), aff'd, 53 F.3d 1 (1st Cir. 1995), cert. denied, 517 U.S. 1103, 116 S.Ct. 1317, 134 L.Ed.2d 471 (1996).

Other courts have seized upon inconsistent statements or arguments concerning an exemption and have interpreted such inconsistencies or ambiguities against the debtor without an objection from the trustee. See Hyman, 967 F.2d at 1319 (rejecting debtor's argument that claiming a "homestead" exempt at a stated value exempted the entire homestead rather than the amount claimed); Alderman v. Martinson (In re Alderman), 195 B.R. 106, 111 (9th Cir. BAP 1996) (resolving conflict in exemption when debtor claimed both a percentage of total asset value and the "maximum allowed" as exempt); Addison v. Reavis, 158 B.R. 53, 55 (E.D. Va. 1993) (rejecting debtor's argument that an exemption of one dollar should be understood as an exemption for an entire asset of undetermined value)[7], aff'd sub nom. In re Grablowsky, 32 F.3d 562 (4th Cir. 1994) (unpublished table decision); Sherbahn, 170 B.R. at 140 (resolving conflict

---

[7] The issue in Addison was whether stating a value of one dollar for an asset and claiming the same asset as exempt to the extent of one dollar was sufficient to remove the asset from the estate. The Addison court held that the debtor's exemption was limited to the exact value stated for the exemption, or one dollar, 158 B.R. at 55, regardless of the value the debtor otherwise attributed to the asset. The court in Allen v. Green (In re Green), 31 F.3d 1098 (11th Cir. 1994), reached the opposite result on essentially the same facts, holding that an asset is entirely exempt if the value stated for the asset and for the exemption are the same. Id. at 1100. The bankruptcy court here purported to follow Addison and to distinguish Green, but since Wick did not state an exact numerical value for her exemption neither of these cases is entirely apposite.

in exemption when debtor claimed both a percentage of total asset value and an exact dollar amount as exempt). A third line of authority holds that the thirty day deadline of Rule 4003(b) applies only to objections to the statutory basis the debtor offers for the exemption and that a trustee may object to the value the debtor ascribed to the exempted asset at any time. See In re Shelby, 232 B.R. 746, 763 (Bankr. W.D. Mo. 1999) (citing cases).

The bankruptcy court drew on all three lines of reasoning in its opinion. The bankruptcy court held, first, that the Wick's exemption contained no "red flag" requiring an objection because the Trustee could calculate the exact amount remaining available to Wick and could conclude on that basis that Wick intended to exempt no more than that amount of her contingent stock option. Next, the bankruptcy court held that Wick's use of "unknown" to state the value of her contingent stock option was ambiguous and should be construed against her, which in this case would mean limiting the exemption to the amount remaining available to Wick under the exemption provision she cited. Finally, the bankruptcy court held that the Trustee's claim to the proceeds of the buyout is at bottom an objection to the value Wick ascribed to the contingent stock option and accordingly is not subject to the Rule 4003(b) deadline. All of these positions are problematic in that they all are inconsistent with various aspects of Taylor.

With respect to the "red flag" issue, Wick's exemption was virtually indistinguishable from the exemption at issue in Taylor, and if the trustee in Taylor should have objected, the Trustee here should have objected as well. The bankruptcy court suggests that if a trustee can calculate the amount a debtor may exempt from the petition, the trustee may assume the debtor intends to exempt only that amount[8] and thereby avoid the necessity for making an objection. But the Supreme Court in Taylor was able to determine that the debtor had "little value" remaining under her available exemptions, and the Supreme Court concluded that the debtor nevertheless intended to exempt the entire asset. Wick did the same.

---

[8] The bankruptcy court also relied on a letter dated July 22, 1999, from Wick's counsel to the trustee in finding that Wick intended to limit her exemption to $3,925. This letter did not exist during the 30 days following the creditors meeting, which took place on September 2, 1997, and the letter therefore is irrelevant to determining whether the Trustee was justified in failing to object within the 30 day period.

The bankruptcy court's ambiguity analysis also does not fit these facts. In cases construing an "ambiguity" in an exemption against a debtor, the debtor created the ambiguity either by including inconsistent statements in the bankruptcy petition or by offering a broad interpretation of a particular term the debtor used in the bankruptcy petition. Wick's exemption did not state a numerical value for her contingent stock option, but her exemption is simply stated, contains no internal contradictions, and requires no more interpretation than did the exemption in Taylor. If the Trustee wanted Wick to clarify her exemption, the Trustee could have required Wick to state an exact numerical value had he elected to do so within the applicable deadline. See In re Wallace, 249 B.R. 677, 680 (Bankr. W.D. Va. 2000) (holding debtor had duty to comply with trustee's reasonable requests for information sufficient to evaluate the necessity for an objection); In re Bell, 179 B.R. 129, 131 (Bankr. E.D. Wis. 1995) (same). The bankruptcy code places the burden on the Trustee to object to questionable exemptions, and the Trustee from Wick's petition and his own inquiries had enough information available to make such an objection.

The bankruptcy court did not misinterpret the cases holding that objections to asset value may be made at any time, but those cases rest on a flawed interpretation of Taylor and are not persuasive authority. The rule allowing objections to asset value to escape the Rule 4003(b) deadline is predicated upon an illusory distinction between objections to validity and objections to value. An objection to validity, in these terms, is an objection to an exemption relying upon an incorrect application of law, such as the use of a homestead exemption provision to exempt nonhomestead property. An objection to value, on the other hand, is an objection to an exemption relying upon a proper application of law but an improper application of the exemption limit, such as the use of a $45,000 homestead exemption to exempt homestead property worth $90,000. Cases allowing belated objections to value would limit Rule 4003(b) to objections to validity because Taylor held that a debtor after the deadline was entitled to an exemption without "a colorable statutory basis." 503 U.S. at 644. An objection to value, in this view, does not involve the statutory basis the debtor cites for the exemption and therefore does not fall within the category of objections that must be made within the deadline.

The problem with this theory is that Taylor itself involved what in these terms would be an objection to value. The debtor in Taylor exempted more value of her lawsuit than the law allowed, and the trustee in Taylor did not object because he underestimated the value of the asset, not because he failed to recognize an illegitimate statutory basis for the exemption. The Supreme Court in holding that the trustee could not belatedly challenge "the validity of the exemption," 503 U.S. at 642, accordingly believed that an objection to value was as much without a colorable statutory basis as an objection to validity. To allow the trustee to object to value at any time also undercuts the Court's articulated purpose for its holding, which is to promote finality through limiting the time within which a trustee may object in any way to the debtor's claimed exemptions. 503 U.S. at 644.

The appellants therefore are correct in asserting that Taylor is controlling authority. The Trustee had information sufficient to determine that Wick's exemption of her contingent stock option was objectionable, and if the Trustee wanted more information or an extension of time within which to object to that exemption, procedures to accomplish those things were available. The law places the burden of making an objection on the trustee, and Taylor stands for the proposition that any objection to a debtor's claimed exemptions must be made, if at all, within the 30 day deadline set by rule. Since the trustee made no objection to Wick's exemption of the contingent stock option within the 30 day period, the contingent stock option claimed as exempt became exempt. No part of the proceeds of the court-ordered stock sale were subject to claims from the bankruptcy estate, and the award of those proceeds to the estate was inappropriate.

IV.

For the foregoing reasons, it is hereby ORDERED that:

1. The judgment of the bankruptcy court is REVERSED.

2. Judgment shall be entered in favor of Appellants Susan E. Wick and Nichols, Kaster & Anderson.

3. The clerk shall enter judgment as follows:

> It is hereby judged and decreed that the bankruptcy estate of the Debtor, Susan E. Wick, has no claim to the proceeds of the sale of the Debtor's stock in TTI. The Trustee of the Debtor's bankruptcy estate shall return any such proceeds in his possession along with any accumulated interest

thereon to the Debtor.

4. Execution of judgment shall be stayed for thirty days from the date of this Order.

Dated: January 2, 2001

DONALD D. ALSOP, Senior Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: JAN 0 2 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*